# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Amy J. St. Eve | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| CASE NUMBER | 02 C 53 | DATE | 10/1/2002 |
| CASE TITLE | Candice Coughlin vs. Health Care Service Corp. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Enter Memorandum Opinion and Order. Coughlin's claims on behalf of herself and the putative class are completely preempted. As such, they are within this court's subject matter jurisdiction. Plaintiff's Motion to Remand is hereby denied. Plaintiff's request for costs and attorney's fees is also denied.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | 3 | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| ✓ | Notices mailed by judge's staff. | | OCT 0 2 2002 | |
| | Notified counsel by telephone. | | date docketed | 20 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| TH | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

CANDICE COUGHLIN, individually )
and on behalf of all others similarly )
situated, )
 )
                       Plaintiff, )   No. 02 C 0053
 )
v. )
 )
HEALTH CARE SERVICE CORPORATION, )
a mutual legal reserve company, d/b/a BLUE )
CROSS BLUE SHIELD OF ILLINOIS, )
 )
                       Defendant. )

**DOCKETED OCT 0 2 2002**

## MEMORANDUM OPINION AND ORDER

Plaintiff Candice Coughlin originally filed her Complaint in state court on behalf of herself and a putative class of similarly situated plaintiffs. Defendant Health Care Service Corporation ("HCSC") removed the action to federal court, alleging that the Employment Retirement Income Security Act of 1974 (ERISA) completely preempted the lawsuit and allowed for removal. (R. 1-1, Notice of Removal.) Coughlin now moves to remand the case to state court. (R. 12-1, Mot. to Remand.) Because this Court finds Coughlin's claims to be completely preempted by § 502(a), Coughlin's Motion to Remand is denied.

## BACKGROUND

Coughlin brought her complaint in state court seeking a declaration of unjust enrichment, the establishment of a constructive trust, judgments of breach of covenants and contracts, and judgment of a violation of Illinois' Consumer Fraud Act and similar statutes enacted by other states. (R. 1-1, Compl.) Coughlin filed the lawsuit on behalf of herself and "all persons

1



similarly situated" and sought class certification. (*Id.* at 1.) Defendant removed the action to federal court, claiming the state law claims were completely preempted by § 502(a) of ERISA. (R. 1-1, Notice of Removal.) Plaintiff then filed a Motion to Remand, arguing that her causes of action are only state law claims that are not completely preempted by ERISA. (R. 12-1, Mot. to Remand.)

Plaintiff's Complaint broadly alleges that HCSC realizes unfair and illegal profits by failing to adjust claimed reimbursement liens to reflect actual costs to the company. (R. 1-1, Compl. ¶ 1.) Plaintiff contends that, as the administrator of plans, HCSC enters into agreements with health care providers to provide services to HCSC members. (*Id.* ¶ 9.) According to the Complaint, HCSC "negotiates significant discounts" for those services. (*Id.*) Plaintiff claims that these discounts can come in various forms, including "up-front" reductions in the amount charged or billed by the providers and "back-end" refunds to HCSC. (*Id.*) Presumably, these discounts are not passed onto the participants in the HCSC plans.

The allegations specific to plaintiff Coughlin provide more context. Coughlin was injured in a fall outside of her apartment on February 2, 2000. (R. 1-1, Compl. ¶ 6.) At the time, she was insured under an HMO plan (the "Plan") that HCSC administered. (*Id.* ¶ 7.) Coughlin received benefits from the Plan for medical treatment related to her injuries. (*Id.*) According to the Complaint, HCSC claimed to cover and pay $23,632.85 of the $23,761.60 in health care provider charges. (*Id.* ¶ 12.) Coughlin was only required to pay $128.75. (*Id.*)

Meanwhile, Coughlin pursued tort claims against a third-party and its insurer for the injuries and damages she sustained in her fall. (R. 1-1, Compl. ¶ 10.) HCSC asserted a lien for $23,632.85 – the same amount as the purported benefits it claimed it paid related to the accident.

2

(*Id.* ¶ 12.) Coughlin eventually settled the personal injury case for $150,000. (*Id.* ¶ 11.) HCSC agreed to comply with Illinois' common fund doctrine by reducing its claimed lien by one-third to pay its share of the attorney's contingency fee. (*Id.* ¶ 15.)

Over this period of time, HCSC sent Coughlin an itemization of services provided to Coughlin that it claimed to have paid. (R. 1-1, Compl. ¶ 13.) Suspecting that HCSC was not providing its actual out of pocket costs related to Coughlin's medical treatment – and believing that HCSC only had the right to collect on the lien what it paid for those services – Coughlin requested further documentation from HCSC. (*Id.* ¶ 14.) Specifically, Coughlin asked to see the contracts that HCSC had with the health care providers and documentation that would demonstrate whether HCSC received discounts or refunds not otherwise evidenced by its itemization of services. (*Id.*) HCSC refused Coughlin's demand and re-sent her the itemization. (*Id.*)

The reimbursement provision in the applicable HCSC Plan states:

> If you or one of your covered dependents are injured by the act of omission of another person and benefits have been provided for that injury under this Certificate, you agree:
>
> – to immediately reimburse the Plan for any payments received, whether by action at law, settlement or otherwise, to the extent that the Plan has provided benefits to you or your covered dependents; and
>
> – that the Plan will have a lien to the extent of benefits provided. Such lien may be filed with the person whose act caused the injury, the person's agent or a court having jurisdiction in the matter.
>
> For purposes of this provision, the cost of benefits provided will be the charges that would have been billed if you had not been enrolled in this benefit program.

3

(R. 1-1, Notice of Removal, Ex. B at 43.)

Plaintiff characterizes its Complaint as one that solely asserts state law claims regarding "who is entitled to what portion of a third-party tort recovery." Plaintiff claims that under these circumstances, there is not complete preemption and therefore this Court does not have subject matter jurisdiction over the action. Defendant counters that the Plaintiff's claim is completely preempted in that her claims are properly recharacterized as arising under federal law. Defendant is correct. Accordingly, removal was proper.

## ANALYSIS

This case is the latest example of the tension between the well-pleaded complaint rule and the complete preemption exception as it relates to ERISA. According to the well-pleaded complaint doctrine, "a cause of action arises under federal law only when the plaintiff's well-pleaded complaint raises issues of federal law." *Metropolitan Life Ins. Co. v. Taylor*, 481 U.S. 58, 63, 107 S.Ct. 1542, 1546, 95 L.Ed.2d 55 (1987) (citations omitted). Therefore, the plaintiff is "master of the complaint." *Caterpillar Inc. v. Williams*, 482 U.S. 386, 398-99, 107 S.Ct. 2425, 2433, 96 L.Ed.2d 318 (1987). In this role, the plaintiff controls the litigation through the issues it raises in its complaint, in contrast to those that the defendant includes in its response. *Jass v. Prudential Health Care Plan, Inc.*, 88 F.3d 1482, 1486 (7th Cir. 1996). The plaintiff is then able to, "by eschewing claims based on federal law, choose to have the cause heard in state court." *Caterpillar*, 482 U.S. at 399, 107 S.Ct. at 2433. These rules prevent the defendant from being in control of the litigation and obtaining a transfer to federal court under the guise of federal preemption simply by raising a federal question as a defense. *Speciale v. Seybold*, 147 F.3d 612, 615 (7th Cir. 1998).

4

The complete preemption doctrine is an exception to the well-pleaded complaint rule. If Congress has completely preempted a given area of law, a plaintiff's state law complaint can be removed and recharacterized as a federal claim. *Lister v. Stark*, 890 F.2d 941, 943 (7th Cir. 1989). Falling under this complete preemption doctrine are all state actions that are within the scope of § 502(a)[1] of ERISA. *Taylor*, 481 U.S. at 67, 107 S.Ct. at 1548.

While Coughlin presented the causes of action on behalf of herself and the putative class members purportedly under state common law, if it "is within the scope of § 502(a) it is completely preempted regardless of how [s]he has characterized it." *Rice v. Panchal*, 65 F.3d 637, 642 (7th Cir. 1995); *Jass*, 88 F.3d at 1488. *See also Doe v. Allied-Signal, Inc.*, 985 F.2d 908, 911 (7th Cir. 1993) (plaintiff cannot "deny a defendant access to federal court if the actual nature of the complaint is federal" and thereby avoid complete preemption). "Therefore, a federal court may, in some situations, look beyond the face of the complaint to determine whether a plaintiff has artfully pleaded his suit so as to couch a federal claim in terms of state law." *Burda v. M. Ecker Co.*, 954 F.2d 434, 438 n.3 (7th Cir. 1992). Any analysis of complete preemption must begin with a review of the complaint. *Varco v. Lapsis*, 172 F.Supp.2d 985, 988 (N.D. Ill. 2001).

I.  **Coughlin's Characterization of the Complaint**

Attempting to show that her Complaint is deserving of a class action treatment, Coughlin alleges the specific common issues of law and fact. (R. 1-1, Compl. ¶ 25.) In doing so, she essentially admits that her state law claims are completely preempted. Coughlin states that the

---

[1] Section 502 is codified as 29 U.S.C. § 1132. It states in relevant part that "[a] civil action may be brought (1) by a participant or beneficiary ... (B) to recover benefits due to him under the terms of his plan, to enforce is rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." 29 U.S.C. § 1132(a).

5

following issues, among others, predominate over any other questions affecting only the individual class members:

> (a) whether [HCSC] has any basis for asserting and collecting reimbursement claims in excess of its net costs of benefits provided to class members;
>
> (b) whether any contract provision [HCSC] might rely upon in asserting and collecting reimbursement claims in excess of its net cost of benefits provided to class members would be unconscionable or otherwise unenforceable;
>
> (g) whether plaintiff and the other class members, as third-party beneficiaries, have a right to only have reimbursements asserted against them for amounts no greater than what [HCSC] actually paid in benefits;
>
> (i) whether [HCSC] should be permanently enjoined from continuing to collect reimbursement liens in amounts in excess of its net cost of benefits provided.

(*Id.*) Plaintiff maintains that "[i]n the absence of a class action, [HCSC] will be able to continue to violate the rights of the members of the class and unjustly enrich itself at the cost of the class members." (*Id.* ¶ 28.)

## II. Application of the Law to the Allegations

The Seventh Circuit has used a three factor test to determine whether a claim is completely preempted: (1) whether the plaintiff is eligible to bring a claim under § 502(a); (2) whether the plaintiff's causes of action are enforceable through § 502(a); and (3) whether the plaintiff's state law claims cannot be resolved without interpreting the plan, which is governed by federal law. *Jass*, 88 F.3d at 1487. When all three factors exist, the state law claims are completely preempted and properly recharacterized as an ERISA claim under § 502(a). *Id.* at 1489-90.

6

Section 502(a)(1) allows any "participant or beneficiary" to bring a civil action. Coughlin alleges that she and the putative class members are beneficiaries or participants, (R. 1-1, Compl. ¶¶ 4, 21), thus they are entitled to bring suit under § 502(a). Coughlin disputes, however, the outcome of the last two factors of the test: (1) whether the Coughlin and the putative class members bring causes of action that are enforceable through § 502(a)(1)(B); and (2) whether the claims require an interpretation of the plan itself. As illustrated below, recent Seventh Circuit case law has merged the two factors for cases arising in this context.

### A. The Causes of Action are Enforceable through § 502(a).

Under § 502(a)(1)(B), a plaintiff may bring a cause of action "to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan." *Id.* This issue has been the subject of many controversies over the years and has led to an evolution of ERISA law.[2] As the law stands today, a simple adjudication of a lien is not enough to allow for complete preemption by § 502(a).

In *Blackburn v. Sundstrand Corp.*, the Seventh Circuit addressed the issue of § 502(a) preemption. 115 F.3d 493 (7th Cir. 1997). In that case, the defendant Sundstrand paid part of the cost of the plaintiffs' medical care that treated their personal injuries. After the plaintiffs settled the underlying state tort action, Sundstrand and the plaintiffs' lawyer maintained claims against the settlement. The plaintiffs filed a state court petition to apportion the fund and asked that

---

[2] In 1996, the *Musinski* court was presented with this issue of whether a simple adjudication of a lien is enough to allow for complete preemption. *See Musinski v. Staudacher*, 928 F.Supp. 739, 743-44 (N.D. Ill. 1996). The court found complete preemption. Later, *Muskinski* was followed as precedent in *Fravel v. Stankus*, 936 F.Supp. 474, 477-78 (N.D. Ill. 1996). The resolution of the issue did not last long, however, as our Court of Appeals abrogated *Musinski* and *Fravel* the next year in *Blackburn v. Sundstrand Corp.*, 115 F.3d 493 (7th Cir. 1997).

7

Sundstrand be responsible for a portion of their attorney's fees and expenses under Illinois' common fund doctrine. The Seventh Circuit found that there was no complete preemption of the state appropriation doctrine. "[N]either the original tort action nor the petition to adjudicate adverse claims to the settlement fund sought a payment from the plan. Section 502 is irrelevant." *Id.* at 495.

In 1998, the Seventh Circuit was confronted with another adjudication of liens case in *Speciale*. In that case, the plaintiff suffered injuries as a result of an automobile accident. *Speciale*, 147 F.3d at 613. The plaintiff's employer's health plan paid a major portion of her medical expenses. Fifteen other providers filed medical liens as well. After settling the personal injury lawsuit, the plaintiff attempted to adjudicate the liens in state court. Her employer removed the issue to federal court for a determination of the parties' respective rights. The Court of Appeals found that the case should have been remanded to state court because only the apportionment of funds was at issue – there was no need to interpret the contract. "The plaintiff's personal injury case has been settled. [The plan's administrator's] subrogation right has not been questioned. What remains is simply a determination on the apportionment of the funds under state law." *Id.* at 617.

What *Blackburn* and *Speciale* stand for is that an adjudication of a lien, without more, is not completely preempted by § 502(a). This proposition comes to light in a district court case that followed. In *Scianna ex rel. Urso v. Furlong*, 56 F.Supp.2d 1000 (N.D. Ill. 1999), the plaintiff filed a petition to approve of a settlement and adjudicate a purported lien by the defendant employee benefits plan. *Id.* at 1001. In the prayer for relief, the petition asked for an order (1) denying the defendant any right to reimbursement from the settlement funds and (2)

8

compelling the defendant to pay all medical bills for the underlying injury. *Id.* at 1002. Judge Moran synthesized the Seventh Circuit's opinions for "guiding principles":

> First, if resolving the state law claim involves a purely factual inquiry that does not require any interpretation of the contract, then the state law remedy is "independent" for preemption purposes. A need to simply refer to the contract will not kick in preemption, but a need to interpret the contract term will. Second, if the plaintiff's "right" is rooted in the contract, then resolution of a claim based on that right would require interpretation of contract and preemption is appropriate. *Id.* at 1003.

The court looked to the "express language of [the] pleading" in determining that it was a claim to recover benefits due under the plan. In contrast to *Speciale* and *Blackburn*, Judge Moran refused to remand the case, because *Scianna* required an assessment of the contractual rights of the parties. *Id.* at 1005 ("We retain jurisdiction over all questions concerning the parties' rights, benefits and obligations under the plan.").

It is clear that the second and third *Jass* factors merge when the plaintiff solely seeks to adjudicate a lien or apportion funds, and that remand is appropriate. Where the complaint or petition requires a contract interpretation, the cause of action is completely preempted. *See, e.g., Scianna*, 56 F.Supp.2d at 1005; *Cortez v. Michael Reese Health Plan, Inc.*, 980 F.Supp. 277, 279-80 (N.D. Ill. 1997) (holding that the "case involves the interpretation of an ERISA plan reimbursement provision" and therefore was subject to the complete preemption doctrine). In contrast, where no contract interpretation is needed, the cause of action is must be remanded. *See, e.g., Speciale*, 147 F.3d at 617; *Blackburn*, 115 F.3d at 495.

In any event, the Complaint filed in state court satisfies each of these two separate *Jass* elements. Coughlin, on behalf of herself and the putative class members, seeks a determination

9

of whether (1) "plaintiff and the other putative class members ... have a right to only have reimbursements asserted against them for amounts no greater than what [HCSC] actually paid in benefits"; and (2) "[HCSC] should be permanently enjoined from continuing to collect reimbursement liens in amounts in excess of its net cost of benefits provided." (R. 1-1, Compl. ¶ 25.) In asking for this relief, Coughlin has destroyed her argument that the claims do not fit within the scope of § 501(a)(1)(B). Certainly, with these requested determinations, Coughlin seeks, on behalf of herself and the putative class members, both to "enforce [their] rights under the terms of the plan" and to "clarify [their] rights to future benefits under the terms of the plan." *See* § 501(a)(1)(B).

### B. Coughlin's Claims must be Resolved by Interpreting the Contract, which is Governed by Federal Law.

Coughlin argues that the language of the Plan and of the plans covering other class members "are not at issue in the case because such provisions allow the conduct complained of herein." (R. 12-1, Mem. in Supp. of Mot. to Remand at 4.) She further argues that "even if these provisions purported to allow such misconduct they would be unenforceable." (*Id.*) These arguments are inconsistent with Coughlin's Complaint, which calls for an interpretation of the plan to ultimately resolve the case. In the Complaint, Coughlin admits that the dominant issues include whether (1) "[HCSC] has any basis for asserting and collecting reimbursement claims in excess of its net costs of benefits provided to class members;" and (2) "any contract provision [HCSC] might rely upon in asserting and collecting reimbursement claims in excess of its net cost of benefits provided to class members would be unconscionable or otherwise unenforceable." (R. 1-1, Compl. ¶ 25.) Deciding whether HCSC had a contractual basis to assert and collect funds in excess of its costs and whether a contractual provision is

10

unenforceable certainly requires an interpretation of the Plan itself. *See Moran v. Rush Prudential HMO, Inc.*, 230 F.3d 959 (7th Cir. 2000) (complete preemption where "the extent and enforceability" of a plaintiff's rights "necessarily requires an examination on the contract."), *aff'd*, ___ U.S.___, 122 S.Ct. 2151, 153 L.Ed.2d 375 (2002).

*Blackburn* and *Speciale* do not provide otherwise. The disputes in those cases simply called for allocation of the settlement funds based on state law. Here, HCSC has already offset its lien by its portion of the attorney's fees, as required by the common fund doctrine. No other liens on the settlement have been brought to the attention of this Court. The only question is whether the reimbursement HCSC seeks is allowable under the specific language of the Plan and whether those terms are enforceable. To answer that question, the Court must interpret the Plan's provisions. Thus, Plaintiff's claims are completely preempted by § 502(a) of ERISA.

## CONCLUSION

Coughlin's claims on behalf of herself and the putative class are completely preempted. As such, they are within this court's subject matter jurisdiction. Plaintiff's Motion to Remand is denied. Plaintiff's request for costs and attorney's fees is also denied.

DATED: October 1, 2002     ENTERED

_____
AMY J. ST. EVE
United States District Court Judge